IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Steven J. Lantz,                          :
                    Plaintiff             :        Civil Action 2:08-cv-966

        v.                                :        Judge Watson

Michael J. Astrue,                        :        Magistrate Judge Abel
Commissioner of Social Security,
                    Defendant             :

# Report and Recommendation

Plaintiff, Steven J. Lantz brings this action under 42 U.S.C. §§405(g) and

1383(c)(3) for review of a final decision of the Commissioner of Social Security denying

his applications for Social Security Disability and Supplemental Security Income

benefits. This matter is before the Magistrate Judge for a report and recommendation

on the administrative record and the parties' merits briefs.

**Summary of Issues.** Plaintiff Lantz maintains that he became disabled at age 35

by HIV infection and a brain tumor (R. 78.), major depressive disorder, chronic pain

anxiety disorder and uncontrolled muscle disorder. (R. 112.) Plaintiff argues that the

decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge breached his affirmative duty to fully and fairly
  develop the factual record and failed to have a mental health professional
  testify as a medical expert at the supplemental hearing.

- The administrative law judge erroneously rejected the opinions of two treating
  infectious disease specialists, Drs. Murry and Anderson.

- The administrative law judge failed to find the plaintiff disabled pursuant to
  the vocational expert's testimony.

- The administrative law judge violated plaintiff's right to due process by stopping his attorney from questioning the medical advisor about how a neuropsychiatric evaluation would assist the administrative law judge in determining Lantz's impairments.

**Procedural History.**  Plaintiff Lantz filed his applications for disability insurance benefits and supplemental security income on April 16, 2004, alleging that he became disabled on January 1, 2004, at age 35.  (R. 68-70, 380-82.)  The applications were denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On December 11, 2006, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 303-34.)  A medical expert also testified.  A supplemental hearing was held on December 3, 2007.  (R. 436-76.)  A medical and vocational expert also testified.  On February 29, 2008, the administrative law judge issued a decision finding that Lantz was not disabled within the meaning of the Act.  (R. 19-29.)  On August 22, 2008, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 6-8.)

**Age, Education, and Work Experience.**  Lantz was born May 1, 1968.  (R. 27, 68.)  He attended high school to the eleventh grade;  he has a limited education.  (R. 27.)  Lantz previously worked as a  bar attendant, commercial/industrial cleaner, liquor establishment manager, and construction worker.  (R. 79, 88-95.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Lantz's testimony as follows:

The claimant testified that he completed the 11th grade. He denied any problems with literacy. He had a driver's license and drove when he needed to; a friend drove him to the hearing. He stated that he was seventy-one inches in height and weighed 205 pounds; he had gained about twenty-five pounds in the past six months.

He further testified that he was no longer able to work due to HIV infection: he experienced chronic flu-like symptoms and sweated uncontrollably. He had developed neuropathy and could not function because of the medication that he was on. He took a total of thirty pills a day: his medications made him tired and confused. He spent most of his time in bed. In addition to his physical problems, he suffered from depression and anxiety. He received mental health treatment at a community mental health center.

(R. 21.)

**Vocational Expert's Testimony.** The vocational expert present at the second hearing was asked to assume an individual with Plaintiff's age, education and work experience who could perform at no more than the light exertional level and was limited to no climbing ladders, ropes, or scaffolding; occasional kneeling, crawling, crouching, stooping, climbing, and balancing. There would be no exposure to hazards, such as, or similar to, unprotected heights and dangerous moving machinery. No exposure to extremes of heat, cold, or humidity. The hypothetical individual retains the mental capacity to have only occasional contact with co-workers, supervisors, and the public. It would be only incidental contact, but not necessary to accomplish his job tasks. There would be occasional work setting and routine changes. No fast paced tasks, strict time standards, or production quotas. (R. 470-71.) The vocational expert testified that this person could not perform his past work. (R. 471.) The vocational

expert also testified that the individual could perform at least 10,000 unskilled, light regional jobs such as a garment sorter, box sealing inspector or labeler. *Id.* Upon questioning by Lantz's attorney, the vocational expert testified that the individual would have a hard time retaining competitive work if the individual had a moderate impairment in managing work stress (R. 474), or if the individual had to rest for 15 to 20 minutes four to five times a day in addition to normal breaks due to sedative effects of medication. (R. 474-475.)

**Medical Evidence of Record.** The relevant medical evidence of record is summarized as follows:

**Physical Impairments:**

Scott E. Smith, D.O. Primary care physician, Dr. Smith treated Lantz for HIV and back pain. (R. 197-211, 230-36, 302-39.) On December 18, 2003, blood tests confirmed that Plaintiff was positive for HIV. (R. 211.)

In February 2004, Plaintiff had some mild flexion limitation and reported pain with straight leg raising, but normal reflexes. Dr. Smith diagnosed bursitis of the right greater trochanter, and right hip degenerative joint disease. (R. 199.) An October 2004, MRI of the Lantz's lumbar spine showed a moderate size broad based disc bulge at L5/S1 eccentric to the left. (R. 197.)

In May 2004, Dr. Smith noted Lantz's problems with memory lapses and confusion, including episodes of talking on the phone and forgetting what the conversation was about and losing track of things at home. (R. 334-39.) He reported

that Lantz "may have a psychiatric disturbance" or "may have either progression of his disease process or another disease process that has been allowed to start by the AIDS" and that "also his medications may be causing this problem." *Id.* Dr. Smith recommended that Lantz be evaluated by a neurologist and psychiatrist "who are familiar with the medications and disease processes and other disease processes that can be caused." *Id.*

In a case management note from May 2004, Dr. Smith documented recent concerns he and Dr. Murry had with Lantz's ability to emotionally handle his situation. (R. 332-33.) He further discussed Lantz's reports of having difficulty walking and remembering things. *Id.* Dr. Smith's note indicates that Dr. Murry admitted Lantz for a several-day hospitalization to have a complete psychiatric and neurological work up, but that Lantz left against his physician's advice. *Id.*

Dr. Smith continued to monitor Lantz's treatment for his HIV and back condition through late 2006. (R. 197-211, 302-39.)

<u>Andrew Murry, M.D.</u> Lantz initially started HIV treatment in January 2004 with infectious disease specialist, Dr. Murry. (R. 154-63.) Lantz's CD4 count was 201 and his viral load was 175.[1] (R. 161.)

---

[1]A CD4 blood test measures the strength of an individual's immune system. <http://www.labtestsonline.org/understanding/analytes/cd4/glance.html>, last visited on November 20, 2009. As Aids progresses, the CD4 count goes down. The Centers for Disease Control and Prevention considers HIV-infected persons who have CD4 counts below 200 cells/mm3 to have AIDS, regardless of whether they have any signs or symptoms. <http://www.labtestsonline.org/understanding/analytes/cd4/test.html> Cell counts for healthy adults range from 500 to 1450 cells. Counts of less than 500 mean that an individuals immune

By March 2004, Lantz told Dr. Murry that he was doing fairly well, but concerned that he had lost 17 pounds since his last visit. (R. 156.) Lantz's CD4 count had risen to 349 and his viral load had fallen to 3,305. (R. 159.) Dr. Murry adjusted Lantz's medications.

An April 12, 2004, brain MRI was normal. (R. 155.) On April 29, 2004, Dr. Murry reported that Lantz is "unable to work and drive on a permanent basis." (R. 154.) Shortly thereafter, Lantz stopped receiving treatment from Dr. Murry. (R. 328, 333.)

Roger Anderson, M.D. In September 2004, Lantz began treatment for his HIV with Dr. Anderson, an infectious disease specialist. (R. 273-91, 364-66.) Lantz had a viral load of less than 50 and his CV4 count was 572. (R. 267-68.) In November 2004, Dr. Anderson reported that Lantz's viral load was now undetectable and CD4 cell counts were greater than 600. (R. 285-86.) Dr. Anderson noted, "He [Lantz] has had a difficult time in that he has severe chronic low back pain with some disk problems. He also has had neuropathy. He has had some wasting syndrome and some evidence of early lipodystrophy." *Id.* Lantz's examination was generally normal and described

system is damaged; and a cell count of less than 200 means the patient is at greater risk of developing new infections and diseases.
<http://www.tibotec-hiv.com/bgdisplay.jhtml?itemname=cd4_and_viral_load_tests>, last visited on November 20, 2009. Dr. Boyce, the medical advisor, testified that generally HIV is defined when an individual's CV4 count is below 200 (Tr. 419).
    A viral load blood test, also tested in conjunction with a CD4 cell count test, is used to monitor the status of the HIV disease.
<http://www.labtestsonline.org/understanding/analytes/viral_load/test.html>, last visited on November 20, 2009. When viral load levels are as low as possible for as long as possible the complications of HIV disease are decreased and the individual's life is prolonged. *Id.* A high viral load can range from 5,000 to 10,000. *Id.*

Lantz as tolerating his HIV treatment regime very well.  *Id.*

In December 2004, Dr. Anderson opined that Lantz's status was that of advanced AIDS with symptoms such as wasting syndrome, lower extremity neuropathy, chronic diarrhea, and severe depression and anxiety.  (R. 284.)  Dr. Anderson reported that ambulation would be "very difficult for any extended time period" and that "any carrying and lifting" would be a struggle.  *Id.* Dr. Anderson noted that Lantz's "activities are cruelly restricted" and that employment "would be detrimental to his health." *Id.*

In January 2005, Lantz had a CV4 count of 788.  (R. 258.)  In July 2005, the CV4 count was 529 and the viral load was 50.  (R. 258.)  Dr. Anderson continued to treat Lantz's HIV through February 2006.  (R. 364-65.)

<u>Michael Shramowiat, M.D.</u> Dr. Shramowiat, a chronic pain specialist, treated Lantz for HIV-related neuropathy, low back and hip pain.  (R. 223-29.)  Dr. Shramowiat evaluated Lantz in November 2004 and recommended that he discontinue taking Vicodin and Percocet an ordered a low dose of Methadone for his symptoms.  (R. 228.)  Dr. Shramowiat assessed HIV neuropathy and lumbar radiculopathy.

Lantz underwent an EMG in December 2004 which showed the presence of a prolongation of motor functioning, tibial nerve bilaterally, cereal sensory abnormalities, and prolongation of the reflex in the left lower extremity.  (R. 212-13.)

In March 2005, Lantz reported to Dr. Shramowiat that his pain was almost resolved.  (R. 223.)  Examination revealed a normal gait, sensation to light touches were

intact in the lower extremities. Deep tendon reflexes were intact and symmetrical. Muscle strength was normal in both lower extremities, while straight leg raising was negative. *Id.* Dr. Shramowiat recommended that Lantz continue taking Methadone for his symptoms and indicated that Lantz was to continue his care with Dr. Anderson for his HIV treatment and pain management. *Id.*

Malcolm Barrett Louden, M.D. Lantz was seen by Dr. Louder, a neurologist for complaints of violent involuntary movements during sleep. (R. 237-39.) Examination in June 2005, revealed deep tendon reflexes which were hypoactive in all extremities. (R. 238-39.) Touch and vibratory sensation were intact, and muscle strength was described as "excellent." His gait was normal.

On August 8, 2005, Dr. Louden again noted Lantz's examination as essentially normal and expressed concern about possible exaggeration of a personality trait, but was concerned that may represent some disinhibition and is another reason why he ordered the MRI of the brain. (R. 237.) On August 22, 2005, an MRI of Lantz's head and brain revealed "very mild cerebral atrophy which is slightly advanced" for his young age. (R. 252.)

Charles A. Derrow, M.D. In May 2004, Dr. Derrow, a state agency physician, reviewed the medical evidence of the record for the Commissioner. Dr. Derrow concluded that Lantz retained the capacity to perform a reduced range of medium level work. (R. 165-69.) Dr. Derrow further noted that Lantz's psychological assessment should be completed separately. (R. 168.)

Paul Heban, M.D. In January 2005, Dr. Heban, reviewed the medical evidence at the Commissioner's request and assessed Lantz has having the ability to perform light level work, based on diagnoses of HIV infection and neuropathy. (R. 215-22.)

**Mental Impairments:**

Woodland Center. From April to July 2004, Lantz sought mental health treatment at Woodland Center for symptoms of anxiety and depression following being diagnosed with HIV. (R. 170-75.) At his intake assessment, Lantz discussed his recent HIV positive status and the circumstances revolving around the recent diagnosis. (R. 173.) Lantz's mood was "depressed and anxious and euthymic at times;" but his thought content and process, speech, motor, intellection, orientation, insight, and judgment were within normal ranges. (R. 174.) Lantz's short term memory was impaired significantly. *Id.* Rizwana Shaheen, M.D., the outpatient psychologist diagnosed moderate major depressive disorder, single episode, and anxiety disorder, not otherwise specified. (R. 170-75.) Dr. Shaheen assigned Lantz a Global Assessment of Functioning (GAF)[2] score of 55-60. (R. 172.) Treatment consisted of mental health therapy sessions and prescription Xanax and Effexor. (R. 171.)

Tri-County Mental Health and Counseling Services, Inc. Records from Tri-County from February 2005 through May 2007 show Lantz received monthly mental

---

[2]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

health treatment and prescription medication. (e.g., Cymbalta, Xanax, Ambien.) (R. 240-50, 340-58, 367-79.) Treatment notes generally indicated that Lantz had a positive response to his treatment regime. *Id.* Lantz reported no mental health problems prior to being diagnosed with HIV in December 2003. (R. 241.) In February 2005, Lantz was assigned a current GAF score range of 45-50, with a year high range of 50-55. (R. 249.) In September 2005, Lantz reported he was "doing better" but still experiencing horrible sleep, compulsive nail picking, and panic attacks at night. (R. 240.) Earlier that month, clinic staff assessed with a GAF score of 60. (R. 242.) In April 2006, Lantz's depression was noted to be in partial remission. (R. 351.) In May 2007, his affect was noted to be "euthymic." (R. 367.)

Gary S. Sarver, Ph.D. In August 2004, Dr. Sarver, a neuropsychologist performed a consultative psychological examination at the Commissioner's request. (R. 176-80.) Lantz reported weight loss, diminished energy, difficulty sleeping through the night and depressed about the circumstances surrounding his contracting of HIV. (R. 179.) Lantz reported that he saw a therapist once a month for depression. On examination, the claimant was alert and oriented times three. His thought processes were sometimes tangential and were characterized by obsessive-compulsive processes and ruminations. His affect was described as "broodingly resentful." Lantz was further described as "somewhat tense and anxious, and ruminative and obsessive." Lantz reported being angry most of the time. He had no energy and has lost 40 pounds in the last six months. He recalled five random digits forward and four in reverse. He recalled three of three

unrelated words immediately, and one of three after an interval of five minutes. Abstract reasoning was in the low average range.  Common sense was in the low average range.

Lantz reported independent living skills although he lived with his mother.  *Id.* Following clinical examination, Dr. Sarver concluded that Lantz was moderately limited in his ability to relate to others, including supervisors and manage daily work stresses, but was only mildly limited in his ability to understand and follow simple one- and two-step instructions and maintain attention and perform simple, repetitive tasks. (R. 179-80.)  Dr. Sarver diagnosed an adjustment disorder with depression and anxiety and major depression and obsessive-compulsive personalty disorder.  (R. 180.)  He assigned Lantz a GAF of 51.  *Id.*

Michael Wagner, Ph. D. and Douglas Pawlarczyk, Ph.D.  In August 2004 and January 2005, Drs. Wagner and Pawlarczyk, reviewed the medical evidence of record for the Commissioner.  (R. 181-96.)  They concluded Lantz had moderate difficulties in maintaining social functioning, but mild restriction of activities of daily living and in maintaining concentration, persistence, or pace.  (R. 194.)  They concluded that Lantz should be able to complete simple multi-step and routine tasks with reduced pressures to perform rapidly and with reduced contact with others.  (R. 183.)

**The Medical Expert**

Paul Boyce, M.D., board certified in internal medicine, testified as the medical expert at both administrative hearings.  (R. 418-34, 451-70.)

11

Dr. Boyce testified that Lantz's primary impairment was his HIV infection, but Lantz did not meet or equal the listing due to an absence of any opportunistic infections. (R. 423.) Dr. Boyce noted that, based on his viral loads, CD4 results, and overall weight gain, this condition had a positive response to treatment. (R. 419-24.) As to Lantz's back condition, Dr. Boyce noted that various objective tests supported a finding of "some limitation, but not much." (R. 422.)

With respect to Lantz's physical impairments, Dr. Boyce testified that Lantz could perform light level work with occasional postural movements (balance, stoop, kneel, crouch, or crawl), but he should avoid ladders, ropes, scaffolds, concentrated exposure to humidity, and exposure to hazards. (R. 426-27.)

Dr. Boyce testified that additional rest periods were not required for this individual because, while the combination of medications can cause fatigue, there was no evidence in the record that Lantz had such side effects. (R. 428.) In support of this testimony, Dr. Boyce pointed to early-2005 treatment notes where Lantz denied having any side effects to his medications. (R. 429.) As to Lantz's anxiety, to the extent of waking up screaming with nightmares, and depression, to the extent of not being able to function, may be caused Lantz's "mental personal response" to being HIV positive. (R. 429-30.) Dr. Boyce did however, testify that he lacked the expertise to comment further about Lantz's mental health limitations and agreed that a psychologist would be better qualified to answer any questions regarding the medication side effects and the Lantz's problems with depression and anxiety. (R. 430-431.)

At the subsequent hearing, Dr. Boyce testified that he considered the updated medical evidence, but did not see any change in Lantz's condition, from a physical standpoint, that would warrant additional limitation. (R. 452.) He indicated that Lantz might benefit from a neuropsychiatric evaluation. (R. 453.)

**Administrative Law Judge's Findings.**  The administrative law judge found that:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2006.

2. The claimant has not engaged in substantial gainful activity since January 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.)*.

3. The claimant has the following severe impairments: HIV infection with neuropathy, adjustment disorder with mixed depression and anxiety, major depression, personality disorder, and obsessive compulsive disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525,404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Giving the claimant the full benefit of doubt with regard to his allegations and subjective complaints, it is found that he requires the following additional nonexertional restrictions: no climbing ladders, ropes, or scaffolding; occasional kneeling, crawling, crouching, stooping, climbing, and balancing; no exposure to hazards, such as, or similar to, unprotected heights and dangerous moving machinery; no exposure to extremes of heat, cold, or humidity; the opportunity to alternate between sitting and standing for fifteen minutes of each hour; simple, repetitive tasks; jobs where the claimant works alone, primarily at his work station, but not in total isolation; occasional contact with co-workers and

supervisors: contact not essential, but incident to the task; occasional contact with the general public as a work requirement, but not necessary to accomplish the job task; occasional work setting and routine changes; and no fast paced tasks, strict time standards, or production quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on May 1, 1968 and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity. there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability as defined in the Social Security Act, from January 1, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 22-29.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389,

401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is

"'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir.

1976). The Commissioner's findings of fact must be based upon the record as a whole.

*Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366

(6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining

whether the Commissioner's decision is supported by substantial evidence, the Court

must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers*

*v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and*

*Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Lantz argues that the decision of the Commissioner

denying benefits should be reversed because:

- The administrative law judge breached his affirmative duty to fully and fairly
  develop the factual record and failed to have a mental health professional testify
  as a medical expert at the supplemental hearing. Lantz argues a mental health
  ME (medical expert) should have been present to evaluate the medical record,
  including the psychological limitations documented by the various physicians.
  The administrative law judge made medical determinations, despite his lack of
  training, expertise, and licensing as a medical professional. Lantz further argues
  that despite concluding that additional mental health evaluations and testimony
  was necessary at the first hearing, the administrative law judge failed to have a

mental health professional at the supplemental hearing and failed to obtain additional psychological evidence as recommended by Dr. Boyce.

- <u>The administrative law judge erroneously rejected the opinions of two treating sources, Drs. Murry and Anderson</u>.  Lantz contends the administrative law judge rejected the opinions of Dr. Anderson and Dr. Murry, but cites only to inconsistencies with Plaintiff's physical impairments and ignores the substantial evidentiary support for both opinions as they pertain to Plaintiff's inability to work due to mental impairments and the sedative side effects of his medications.

- <u>The administrative law judge failed to find the plaintiff disabled pursuant to the vocational expert's testimony</u>.  Lantz argues the administrative law judge should have properly taken the VE's testimony that an individual that had to rest for 15 to 20 minutes four to five times a day in addition to normal breaks due to sedative effects of medication would be unemployable into consideration and found Plaintiff disabled.

- <u>The administrative law judge violated plaintiff's right to due process.</u> Plaintiff contends the administrative law judge abused his discretion and denied Plaintiff's right to Due Process by not allowing the medical expert to answer his counsel's questions about if and how a neuropsychiatric evaluation would help determine the limitations imposed by Lantz's psychiatric impairments. (R. 453-55.)

**<u>Analysis.</u>**

Treating Doctor: Legal Standard. A treating doctor's opinion on the issue of disability is entitled to greater weight than that of a physician who has examined plaintiff on only one occasion or who has merely conducted a paper review of the medical evidence of record. *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). The treating doctor has had the opportunity to observe his patient's impairments over the course of time.

Even though a claimant's treating physician may be expected to have a greater insight into his patient's condition than a one-time examining physician or a medical adviser, Congress specifically amended the Social Security Act in 1967 to provide that to be disabling an impairment must be "medically determinable." 42 U.S.C. 423(d)(1)(A). Consequently, a treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527.

The Commissioner's regulations provide that she will generally "give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." 20 C.F.R. § 404.1527(d)(1). When a treating source's opinion "is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2). In determining the weight to assign a treating source's opinion, the Commissioner considers the length of the relationship and frequency of examination; nature and extent of the treatment relationship; how well-supported the opinion is by medical signs and laboratory findings; its consistency with the record as a whole; the treating source's specialization; the source's familiarity with the Social Security program and understanding of its evidentiary requirements; and the extent to which the source is familiar with other information in the case record relevant to decision. *Id.* Subject to these guidelines, the Commissioner is the one responsible for determining whether a claimant is disabled. 20 C.F.R. § 404.1527(e)(1).

Social Security Ruling 96-2p provides that "[c]ontrolling weight cannot be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." Consequently, the decision-maker must have "an understanding of the clinical signs and laboratory findings and what they signify." *Id.* When the treating source's opinion "is well supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight . . . ." The Commissioner's regulations further provide that the longer a doctor has treated the claimant, the greater weight the Commissioner will give his or her medical opinion. When the doctor has treated the claimant long enough "to have obtained a longitudinal picture of your impairment, we

will give the source's [opinion] more weight than we would give it if it were from a

non-treating source. " 20 C.F.R. §404.1527(d)(2)(i).

The Commissioner has issued a policy statement about how to assess treating

sources' medical opinions. Social Security Ruling 96-2p. It emphasizes:

1. A case cannot be decided in reliance on a medical opinion without
   some reasonable support for the opinion.

2. Controlling weight may be given only in appropriate circumstances
   to medical opinions, *i.e.*, opinions on the issue(s) of the nature and
   severity of an individual's impairment(s), from treating sources.

3. Controlling weight may not be given to a treating source's medical
   opinion unless the opinion is well-supported by medically acceptable clinical
   and laboratory diagnostic techniques.

4. Even if a treating source's medical opinion is well-supported,
   controlling weight may not be given to the opinion unless it also
   is "not inconsistent" with the other substantial evidence in the case record.

5. The judgment whether a treating source's medical opinion
   is well supported and not inconsistent with the other substantial
   evidence in the case record requires an understanding of the
   clinical signs and laboratory findings and what they signify.

6. If a treating source's medical opinion is well-supported and not inconsistent
   with the other substantial evidence in the case record, it
   must be given controlling weight; *i.e.*, it must be adopted.

7. A finding that a treating source's medical opinion is not entitled to
   controlling weight does not mean that the opinion is rejected. It may
   still be entitled to deference and be adopted by the adjudicator.

The case law is consistent with the principals set out in Social Security Ruling 96-

2p. A broad conclusory statement of a treating physician that his patient is disabled is

not controlling. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). For the treating

physician's opinion to have controlling weight it must have "sufficient data to support the diagnosis." *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 536, 538 (6th Cir. 1981); *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). The Commissioner may reject the treating doctor's opinions when "good reasons are identified for not accepting them." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988); 20 C.F.R. § 404.1527(d)(2)("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion"); *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). The Commissioner must make the final decision on the ultimate issue of disability. *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 855 (6th Cir. 1986); *Harris v. Heckler*, 756 F.2d at 435; *Watkins v. Schweiker*, 667 F.2d 954, 958 n.1 (11th Cir. 1982).

<u>Treating Doctor: Discussion.</u> Lantz argues that the administrative law judge erroneously rejected the opinions of two treating sources, Drs. Murry and Anderson. Lantz contends the administrative law judge rejected the opinions of Dr. Anderson and Dr. Murry, but cites only to inconsistencies with Lantz's physical impairments and ignores the substantial evidentiary support for both opinions as they pertain to Lantz's inability to work due to mental impairments and the sedative side effects of his medications.

The Commissioner maintains that the administrative law judge properly evaluated the medical source opinions of record and correctly found that Dr. Anderson and Dr. Murry's extreme opinions were unsupported by objective clinical findings and

were inconsistent with other substantial evidence of record.

The administrative law judge weighed the opinions of Drs. Murry and Anderson as follows,

> Under Social Security Ruling 96-2p, a medical opinion provided by a treating physician must be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and the opinion is not inconsistent with the other substantial medical and non medical evidence in the case record. Drs. Murry and Anderson both reported that the claimant was disabled from all work activity (Exhibits IF, page 1 and 14F, page 12). However, neither opinion is supported by the physicians' treatment notes: Dr. Murry's chart notes indicate that the claimant was doing fairly well (Exhibit IF, page 3). Dr. Anderson reported that the claimant experienced wasting syndrome, which is inconsistent with the claimant's testimony that he had gained twenty-five pounds in the past six months. The physician's diagnosis of advanced AIDS is inconsistent with his chart notes that indicate that the claimant's viral load was undetectable and his CD4 cell counts were greater than 600 (Exhibit l4F, page 13). As neither medical opinion is well-supported by the objective medical evidence of record, they cannot be accepted.

(R. 25-26.)

To be afforded controlling weight, the opinion of a treating physician must be well supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *See Walters*, 127 F.3d at 530; 20 C.F.R. § 404.1527(d)(2). Because Dr. Anderson and Dr. Murry's assessments that Lantz was unable to perform even sedentary work activity was not supported by their own records or the other substantial evidence of record, the administrative law judge was not bound to give the treating physician's opinion controlling weight. *Walters*, 127 F.3d at 530.

Nevertheless, the administrative law judge committed reversible error by failing to state what weight, if any, he gave to the opinions of Dr. Anderson and Dr. Murry. Even where the administrative law judge determines not to give the opinion of a treating physician controlling weight, Social Security regulations and the law of the Sixth Circuit nonetheless require the administrative law judge to determine and articulate on the record the amount of weight given to the opinion. *See* 20 C.F.R. § 404.1527(d); *Wilson v. Commissioner*, 378 F.3d 541 (6th Cir. 2004). Social Security Ruling 96-2p provides in relevant part:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' *not that the opinion should be rejected*. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. *In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight*.

SSR 96-2p (emphasis added). As explained by the Court in *Wilson,* "If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors-- namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (discussing 20 C.F. R. § 404.1527(d)(2)). The administrative law judge must satisfy

the clear procedural requirement of giving "good reasons" for the weight accorded to a treating physician's opinion: "[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' Social Security Ruling 96-2p, 1996 WL 374188, at *5 (1996)." *Wilson*, 378 F.3d at 544. The specific reasons requirement exists not only to enable claimants to understand the disposition of their cases, but to ensure "that the ALJ applies the treating physician rule and permit meaningful review of the ALJ's application of the rule." *Id*. Only where a treating doctor's opinion "is so patently deficient that the Commissioner could not possibly credit it" will the administrative law judge's failure to observe the requirements for assessing weight to a treating physician not warrant a reversal. *Id*. at 547.

In the instant case, the administrative law judge rejected Dr. Murry's assessment that Lantz was "unable to work and drive on a permanent basis," (R. 154.) and Dr. Anderson's assessment that employment "would be detrimental to his [Lantz's] health" (R. 284.). The administrative law judge declined to give "controlling weight" to the treating physician's opinions and therefore erred by failing to indicate what weight he did give to Dr. Murry's and Dr. Anderson's opinions. *Wilson*, 378 F.3d at 544. The administrative law judge's decision is not "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical

opinion and the reasons for that weight.'" *Wilson,* 378 F.3d at 544 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). *See also Hall v. Commissioner,* 148 Fed. Appx. 456, 461 (6th Cir. 2005). The administrative law judge's decision does not discuss the regulatory factors, namely the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of his opinions, the consistency of the opinions with the record as a whole, and the specialization of the treating source, and state the weight they led him to attach to the treating physicians' opinions. The Court cannot say that Dr. Murry's and Dr. Anderson's opinions are "so patently deficient that the Commissioner could not possibly credit it" to excuse the administrative law judge's failure in this case. By failing to consider the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight to be given the opinions of Dr. Murry and Dr. Anderson, the administrative law judge's rejection of the treating physician's assessment of Lantz's functional capacity is not supported by substantial evidence. The administrative law judge's decision in this respect constitutes legal error warranting a reversal and remand of this case for reconsideration of Lantz's residual functional capacity, with proper analysis of the weight to be given Dr. Murry and Dr. Anderson's opinions consistent with the treating source regulation, 20 C.F.R. § 416.927(d). *Wilson*, 378 F.3d at 546.

Accordingly, Lantz's challenges to the administrative law judge's evaluation of

medical source opinions are well taken.[3]

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **REMANDED** to properly evaluate the opinions of Dr. Murry and Dr. Anderson.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

   s/Mark R. Abel
United States Magistrate Judge

---

[3] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of the remaining contentions is unwarranted.